18751. ATLANTA & LOWRY NATIONAL BANK *v.* FIRST NATIONAL BANK OF CARROLLTON.

DECIDED NOVEMBER 17, 1928.

*Poole & Fraser,* for plaintiff in error.
*Watkins, Asbill & Watkins,* contra.

BELL, J. First National Bank of Carrollton sued Atlanta & Lowry National Bank upon a check, in the municipal court of Atlanta. A nonsuit was affirmed by the appellate division of the court, the judgment was reversed by the superior court on certiorari, and the defendant brought the case to this court.

The check was drawn on the defendant bank by Dr. Quillian and, after certification, came into the possession of the plaintiff bank. The plaintiff bank claimed to have acquired the check by indorsement, while the defendant bank contended that the purported indorsement was unauthorized; and this was the sole issue upon the trial.

Dr. Quillian, the maker, testified as follows: "During the summer of 1926 I had various conferences with Mr. Wilson and Mr. Sims in regard to purchasing a Stutz motor-car from the Stutz Atlanta Motor Company. I signed a contract some time in July, 1926, for the delivery of a specified car. For some reason I could get no delivery of this car, although I made several requests of Mr. Wilson and Mr. Sims for delivery. On the 14th of October, 1926, I telegraphed the Stutz Motor-Car Company of America Inc., at Indianapolis, and they telegraphed back that their representative was in Atlanta and for me to see him. I saw the representative of the Stutz factory who was in Atlanta, and I signed a new contract with the Stutz Atlanta Motor Company which called for a cash payment of $500. I gave a check payable to the Stutz Motor-Car Company of America Inc., to Stutz Atlanta Motor Company as payment of the $500 referred to in the contract made on the same date with the Stutz Atlanta Motor Company. This check was written on a blank which was furnished by Stutz Atlanta Motor Company. I made this check payable to the Stutz Motor-Car Company of America Inc., on purpose, as I had had difficulty in getting a delivery of a car by the Stutz Atlanta Motor Company and had heard that the Stutz Atlanta Motor Company was in a very shaky financial condition. This check was delivered to Stutz Atlanta Motor Company as payment under the contract signed with the Stutz Atlanta Motor Company. Later I got a car direct from the Stutz Motor Car Company of America Inc., after the Stutz Atlanta Motor Company had failed and the agency had been withdrawn from them. There were only two contracts signed by me for the delivery of a Stutz automobile. Both were with the Stutz Atlanta Motor Company; one was dated some time in July, 1926, and the other October 14, 1926. The check here in question was given for payment under the contract signed Ocober 14, 1926, with the Stutz Atlanta Motor Company. This check was left with the latter company. . . I did not receive a car under the contract with the

Stutz Atlanta Motor Company dated July, 1926, nor under the contract dated October 14, 1926, but finally got a car direct from the factory after telegraphing them and seeing their representative in Atlanta."

The contract of October 14, 1926, was introduced in evidence and contained a recital of a cash payment of $500. The agreement further provided that in case the purchaser should make default or cancel the order, the seller might as an option retain as liquidated damages "the above cash payment." The check referred to by Dr. Quillian, the instrument in suit, was introduced in evidence, and was as follows:

"Oct. 14, 1926.
"Atlanta & Lowry National Bank
" (Bank on which customer wishes check drawn)
. "Whitehall Street Branch

"Pay to the order of Stutz Motor Car Co. of America, Inc., (company through which sale is made) five hundred and 00/100 dollars. $500.00.

(S) "W. Earl Quillian
"986 Ponce de Leon Ave."

The Stutz Atlanta Motor Company presented the check to the drawee, the defendant bank, and obtained certification as follows:

"Certified when properly indorsed. No. 21186.
"October 15, 26. Atlanta & Lowry Natl. Bank,
"D. B. De Saussure, Asst. Cashier."

Fred S. Wilson, who had acted for the Stutz Atlanta Motor Company in making the contract for the sale of the car, and who appears to have been the manager of that company, then indorsed the check in the name of the payee and also in the name of his own company, and negotiated it to the plaintiff bank for value, the indorsement being in form as follows:

"Stutz Motor Car Co. of America, Inc.
"Stutz Atlanta Motor Co.
"By Fred S. Wilson, State Distributor."

The plaintiff placed the amount of the check to the credit of Stutz Atlanta Motor Company, "which amount the Stutz Atlanta Motor Company has checked out." The plaintiff presented the check to the defendant in due course and, payment being refused, the present action followed.

We think that under the facts disclosed the plaintiff was entitled to recover, and hence will hold that the superior court properly sustained the certiorari and remanded the case for trial.

In paragraph 3 of section 9 of the uniform negotiable instruments law (Ga. L. 1924, p. 126, Park's Annotated Code, Supp. 1926, § 4269 (9), Michie's Ga. Code (1926), § 4294 (9)), it is provided that an instrument is payable to bearer when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable; and it is the general rule that a note or bill which is payable to bearer is negotiable by delivery, without indorsement. The check involved in this case was payable to a fictitious person within the meaning of the law. While the payee was named as Stutz Motor Car Company of America Inc., and while this was the name of an existing person, yet that company had no connection whatsoever with the transaction resulting in the execution and delivery of the check, and is, as to that matter, to be treated as a nonentity. Although it was testified by Dr. Quillian that he purposely made the check payable to the manufacturer because of some doubt that had been engendered in his mind as to the solvency of the local dealer with whom he made the contract of purchase, this intention remained a secret in his own mind, and the effect of the instrument which he then made and put into circulation must be determined by his intention as expressed in the words of the written agreement (of which the check was a part), construed in the light of the attendant and surrounding circumstances. Civil Code (1910), §§ 4266, 4268.

The words "fictitious person," as used in the statute, are not limited to "persons" nonexisting. If the person named as payee has no connection with the instrument and no right whatsoever under it, and if this was the intention of the drawer or maker, it is immaterial whether the name of such payee was that of an existing person or of a fictitious being. This is but a restatement of what has been held by numerous other courts, and expresses the generally accepted doctrine.

Since the check was given to cover the cash payment on the contract between Dr. Quillian, the maker, and Stutz Atlanta Motor Company, the local dealer, to which contract there was no other party, there could have been no fair contention that the check should be actually and in fact payable to Stutz Motor Car Company of

America Inc., although that company was named as payee. There were only two parties to the sale agreement, and these alone were the parties to the check. In these circumstances it might have been that no holder of the check could ever have obtained the indorsement of the company which appeared as payee. No consideration flowed from that company for the making of the check, and it had no property or interest therein. It could not have recovered the check from the possession of any other person, and in the absence of some new consideration any indorsement that it might have made would have been voluntary, or an indorsement for accommodation only. And yet it was the intention of the maker that the check should pass as a negotiable instrument and be paid by the bank on which it was drawn. Therefore, it appears conclusive that the right to indorse the check in the name of the payee as well as in its own name was in Stutz Atlanta Motor Company, if an indorsement by any one was necessary.

. The check having been certified, the maker was discharged, and there resulted a new contract whereby the bank became obligated to pay the proceeds to the holder on demand. Ga. L. 1924, p. 126, §§ 188, 189; Adams v. Manufacturers' &c. National Bank, 63 Misc. 403, 116 N. Y. S. 595. The only question is, to whom should the payment be made. If there is any failure of consideration the maker must look to the local dealer, the person agreeing to sell him the automobile, as no other person appears to have been affected with notice. The defendant bank has $500 which on certification of the check it must have set aside for someone. Who is the right and proper claimant? Not the expressed payee, Stutz Motor Car Company of America Inc., for that company, so far as appears, is absolutely unconcerned; not Stutz Atlanta Motor Company, for this company has conveyed its rights to the plaintiff, First National Bank of Carrollton; and obviously not Dr. Quillian, for he was the maker, and it was the result of his order that the money was set aside for another. There is no other possible claimant to be mentioned. From this examination it is clear that First National Bank of Carrollton is the only proper claimant, and that its right to payment is not subject to any conditions that have not been met.

The check having been duly indorsed, it is unnecessary in the present case to determine whether under paragraph 3 of section 9 of

the negotiable instruments law it might have been negotiated by delivery,—that is, whether an indorcement was necessary in order to pass title of the payee.

There is possibly another theory upon which the plaintiff should be held entitled to recover. Section 43 of the negotiable instruments law (Ga. L. 1924, p. 126) provides that where the name of the payee is wrongly designated or misspelled, he may indorse the instrument as therein described, adding, if he thinks fit, his proper signature. It would seem that under the facts of this case it should be held that the payee was the Stutz Atlanta Motor Company, and that its name was wrongly designated. In this view, it would again result that the indorsements made upon the check were legal and proper. First National Bank *v.* People's National Bank, 136 Va. 276 (118 S. E. 82, 36 A. L. R. 736) ; Integrity Trust Co. *v.* Lehigh Ave. &c. Bldg. & Loan Asso., 273 Pa. 46 (116 Atl. 539, 21 A. L. R. 1554).

It is the general rule that where a note or bill is executed to one in other than his real name he may recover by showing that he was the payee intended. 8 C. J. 180; *Epting* v. *Jones,* 47 *Ga.* 622.

On the question of the power of the judges of the municipal court of Atlanta to grant nonsuits, see *Shippey* v. *Owens,* 17 *Ga. App.* 127 (2) (86 S. E. 407) ; *Murphy* v. *Sulzberger,* 17 *Ga. App.* 686 (87 S. E. 808) ; Ga. L. 1916, p. 199, section 4.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*